Richard FLECK; Diane Fleck;

v.

KDI SYLVAN POOLS, INC., a/k/a Sylvan Pools; Muskin, Inc.; Nichols Swim Pools, Inc.; James Hubert,

v.

S.K. PLASTICS, INC.; Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc.,

v.

ATREO MANUFACTURING CO., INC.; Poseidon Pools, Inc.; Poseidon Pools of America, Inc.; Gibraltar Factors Corp.; the Gibraltar Corporation; S & V Pools, Inc.; Esther Williams Swimming Pool Company; Esther Williams Pools, Inc.; and Esther Williams all Aluminum Swimming Pool Company

Richard Fleck and Diane Fleck, Appellants (Two Cases).

Richard FLECK; Diane Fleck;

v.

KDI SYLVAN POOLS, INC., a/k/a Sylvan Pools; Muskin, Inc.; Nichols Swim Pools, Inc.; James Hubert

v.

S.K. PLASTICS, INC.; Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc.

v.

ATREO MANUFACTURING CO., INC.; Poseidon Pools, Inc.; Poseidon Pools of America, Inc.; Gibraltar Factors Corp.; the Gibraltar Corporation; S & V Pools, Inc.; Esther Williams Swimming Pool Company; Esther Williams Pools, Inc.; and Esther Williams all Aluminum Swimming Pool Company

Hoffinger Industries, Inc., (Incorrectly Designated as Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc.), Appellant (Two Cases).

Richard FLECK; Diane Fleck;

v.

KDI SYLVAN POOLS, INC., a/k/a Sylvan Pools; Muskin, Inc.; Nichols Swim Pools, Inc.; James Hubert

**108**

v.

**S.K. PLASTICS, INC.; Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc.**

v.

**ATREO MANUFACTURING CO., INC.; Poseidon Pools, Inc.; Poseidon Pools of America, Inc.; Gibraltar Factors Corp.; the Gibraltar Corporation; S & V Pools, Inc.; Esther Williams Swimming Pool Company; Esther Williams Pools, Inc.; and Esther Williams all Aluminum Swimming Pool Company; Nichols Swim Pools, Inc., Appellants.**

**Richard FLECK; Diane Fleck;**

v.

**KDI SYLVAN POOLS, INC., a/k/a Sylvan Pools; Muskin, Inc.; Nichols Swim Pools, Inc.; James Hubert**

v.

**S.K. PLASTICS, INC.; Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc.**

v.

**ATREO MANUFACTURING CO., INC.; Poseidon Pools, Inc.; Poseidon Pools of America, Inc.; Gibraltar Factors Corp.; the Gibraltar Corporation; S & V Pools, Inc.; Esther Williams Swimming Pool Company; Esther Williams Pools, Inc.; and Esther Williams all Aluminum Swimming Pool Company**

**Gibraltar Corporation, Appellant.**

**Richard FLECK; Diane Fleck;**

v.

**KDI SYLVAN POOLS, INC., a/k/a Sylvan Pools; Muskin, Inc.; Nichols Swim Pools, Inc.; James Hubert**

v.

**S.K. PLASTICS, INC.; Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc.**

v.

**ATREO MANUFACTURING CO., INC.; Poseidon Pools, Inc.; Poseidon Pools of America, Inc.; Gibraltar Factors Corp.; the Gibraltar Corporation; S & V Pools, Inc.; Esther Williams Swimming Pool Company; Esther Williams**

**Pools, Inc.; and Esther Williams all Aluminum Swimming Pool Company**

**S & V Pools, Inc. and Poseidon Pools of America, Inc., Appellants (Two Cases).**

Nos. 91–2045, 91–2090, 92–1001, 92–1077, 92–1090, 92–1137, 92–1138 and 92–1165.

United States Court of Appeals, Third Circuit.

Argued July 31, 1992.

Decided Dec. 4, 1992.

Sur Petition for Rehearing Dec. 31, 1992.

Gary B. Cutler and Richard A. Kraemer (argued), Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for appellee KDI Sylvan Pools.

Harry G. Mahoney (argued), Deasey, Mahoney, Bender & McKenna, Philadelphia, Pa., for appellee/appellant Nichols Swim Pools.

Mark H. Scoblionko, Scoblionko, Scoblionko, Muir & Bartholomew, Allentown, Pa., Ernest R. Bazzana (argued), Plunkett & Cooney, Detroit, Mich., and Dennis J. Clark, Plunkett & Cooney, Pittsburgh, Pa., for appellee/appellant Doughboy Recreational, Inc.

Samuel Goldblatt, Saperston and Day, P.C., Buffalo, N.Y., for appellees Poseidon Pools and Gibraltar.

George F. Dale (argued) Dale & Korolishin, Philadelphia, Pa., for appellee/appellant Poseidon Pools of America and S & V Pools.

Angelo L. Scaricamazza, Jr. (argued) Naulty, Scaricamazza & McDevitt, Philadelphia, Pa., for appellee/appellant Gibraltar Corp.

Before: BECKER, MANSMANN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Richard Fleck dove into a three-and-half foot deep above-ground swimming pool, broke his neck, and was rendered a quadriplegic. The pool and its replacement pool liner did not have depth markers or "No Diving" warnings. The Flecks contended that the homeowner was negligent and that the sellers of the pool and replacement liner were strictly liable for failing to warn under Pennsylvania law.

### I.

#### FACTS AND PROCEDURE

In 1971, KDI Sylvan Pools, Inc. sold an above-ground pool for $875 to a homeowner. The pool was damaged in a hurricane, and in 1972 Sylvan replaced it with another. The replacement was a four foot

David F. Binder and A. Roy Decaro (argued) Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, Pa., for appellants/appellees Richard and Diane Fleck.

high above-ground pool with neither depth markers nor diving warnings. It has never been removed or disassembled. The pool liner developed a leak; so, it was replaced with a liner sold by Nichols Swim Pools, Inc. and manufactured by Doughboy Recreation Inc., a division of Hoffinger Industries, Inc. Like the pool itself, the replacement liner did not have warnings affixed, although it did come with decals (which were never used). When James Hubert bought the house in 1984, he built an elaborate, three-tiered deck system around the pool, which completely obstructed the view of the pool's side walls.

Hubert decided to throw a large party, referred to as the "Fourth Annual Hawaiian Blitz." The invitation stated, "Plenty of beer, wine and frozen drinks on hand." It indicated that Hubert was going to have athletic events including swimming. Six kegs of beer and three 5–liter boxes of wine were available.

Richard Fleck and his wife Diane arrived at Hubert's home in the early evening. In a two hour period Fleck consumed four or five 12–ounce cups of beer, smoked marijuana, and decided to go swimming. He climbed to the top of the deck system surrounding the pool, dove in head first, hit his head on the bottom of the pool, and broke his neck. Fleck, who had never used this pool, testified that the pool looked six feet deep. This was corroborated by Hubert, who testified that sometimes the pool looked twelve feet deep. Fleck further testified that had there been depth markers or warnings he would have seen them and would have known not to dive into a four foot deep pool.

The Flecks sued Hubert, alleging negligence. They also brought strict product liability claims against Sylvan, the pool seller, and Nichols, the seller of replacement liner. Sylvan joined Poseidon Pools of America, S & V Pools Inc., and The Gibraltar Corporation, the alleged corporate successors of the defunct pool manufacturer Atreo Manufacturing Company (which is not a party to this action) as third-party defendants. Nichols filed a third-party complaint for indemnification against Hoffinger, the manufacturer of the liner. Hoffinger did not file cross-claims against the three third-party defendants.

Before trial, the Flecks released Hubert from any liability for $300,000. They further agreed that in any action in which Hubert is found to be a tortfeasor, the amount of the verdict would be reduced by the pro rata or comparative share of Hubert's fault.

Also before trial, Nichols filed a petition for bankruptcy under Chapter 11. Its assets were protected by the automatic stay provision of 11 U.S.C. § 362. To lift the stay, the Flecks petitioned the bankruptcy court and agreed that any recovery in their action against Nichols "will be limited solely to the proceeds of the applicable insurance of the Debtor Defendant Nichols Swim Pools, Inc." With this understanding, the bankruptcy court lifted the stay.

At trial, the district court directed verdicts for Sylvan and the three third-party defendants, reasoning that the action was time barred by the statute of repose, 42 Pa.C.S. § 5536. The court also directed a verdict for Nichols on its third-party indemnification action against Hoffinger. This was done with Hoffinger's tacit, if not express, consent. The court, however, denied Nichols' request for attorney's fees and costs incurred in the defense of the liability indemnified against.

At the end of the liability trial, the jury answered special interrogatories. It found both Hubert and Fleck negligent and that their combined negligence was a substantial factor in bringing about Fleck's injury. As between Hubert and Fleck, the jury apportioned causation 36% to Hubert and 64% to Fleck. Since no liability attaches to a defendant in a negligence action if his comparative fault is less than the plaintiff's, 42 Pa.C.S. § 7102(a), even without the settlement Hubert would not have been liable to the Flecks.

The jury also found that the liner lacked an element necessary to make it safe for reasonably foreseeable use, and that the defect was a substantial factor in bringing about the harm. As between Hubert and Nichols, it apportioned Hubert's 36% re-

sponsibility for causation, 60% to Hubert and 40% to Nichols.

The jury returned a verdict awarding $10 million to Fleck and $250,000 to his wife. The district court entered judgment in the amount of $11,750,000 and $293,750, representing the verdict and delay damages. Nichols and the Flecks settled for $2,092,-513, which the Flecks contend partially satisfies the judgment.

Since Nichols' liability shifted to Hoffinger by way of indemnification, and since all other parties have been found not liable, the money trail ended with Hoffinger. Hoffinger and Nichols filed post-judgment motions for, among other things, judgment notwithstanding the verdict and for a new trial. Nichols withdrew its motions for JNOV and new trial, but not its motion requesting attorney's fees and costs for the indemnification action. The court denied all motions.

The Flecks, Nichols and Hoffinger appeal. The Flecks appeal the order directing verdict for Sylvan under the statute of repose. Nichols appeals the denial of attorney's fees and costs in its indemnification action against Hoffinger. The bulk of this appeal belongs to Hoffinger, which appears to contest all orders and decisions affecting its liability.

## II.

### ANALYSIS

We apply Pennsylvania product liability law. The Pennsylvania Supreme Court has adopted Section 402A of the Restatement (Second) of Torts. *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). That section imposes strict liability upon the seller of "any product in a defective condition unreasonably dangerous to the user or consumer."

█ Absent clear guidance from the Pennsylvania Supreme Court, we must predict how it would decide the issues and will, when persuasive, rely on decisions of the intermediate appellate court, unless we are convinced that the supreme court would decide otherwise. *West v. American Telephone & Tel. Co.,* 311 U.S. 223, 237, 61

S.Ct. 179, 183, 85 L.Ed. 139 (1940); *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.1980).

We have examined the myriad of issues presented and conclude that only these merit discussion:

1. Whether directed verdict for defendant Sylvan was proper under the Pennsylvania statute of repose;

2. Whether Hoffinger waived its right to appeal the directed verdict against it in Nichols' third-party indemnification action;

3. Whether Nichols is entitled to attorney's fees and costs in its indemnification action;

4. Whether, as a matter of law, a manufacturer of a replacement pool liner has a duty to warn of the pool depth or dangers of diving into a shallow above-ground pool;

5. Whether, as a matter of law, the dangers of diving into this pool of unknown depth was open and obvious, relieving Hoffinger of a duty to warn;

6. Whether Pennsylvania recognizes a contributory negligence defense or a comparative negligence scheme of apportioning damages in a strict liability action for failure to warn;

7. Whether the jury verdict should be reduced to an amount equal to the insurance proceeds available to Nichols.

### A.

#### *Directed Verdict For Sylvan*

█ The district court directed a verdict for Sylvan, the pool seller, because it believed the Flecks' suit to be time-barred by the Pennsylvania statute of repose, which provides:

(a) General Rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion

of construction of such improvement to recover damages for:

\* \* \* \* \* \*

(3) Injury to the person or for wrongful death arising out of such deficiency.

42 Pa.C.S. § 5536. Whether the directed verdict is proper is a question of Pennsylvania law. We exercise plenary review. *Compagnie des Bauxites de Guinee v. Insurance Co. of N. America,* 724 F.2d 369, 371 (3d Cir.1983).

■ For the statute to apply, a defendant must show (1) that 12 years have lapsed since the construction, (2) that the construction is an "improvement to real property," and (3) that he falls within the class of persons the statute protects. There is no dispute that over 12 years have elapsed. We consider the latter two issues.

In *McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907 (1989), the Pennsylvania Supreme Court defined "improvement" as:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

564 A.2d at 909, quoting Black's Law Dictionary 682 (5th ed. 1979). The court believed that this definition comports with the plain and common usage of the term "improvement." Under this definition, the court rejected the plaintiff's argument that a coal delivery system, a part of a powerhouse, which provided heat and hot water for sixty-eight buildings, was a "product." It held that the system was an improvement to real property as a matter of law. *Id.* at 909–10.

The Pennsylvania courts have consistently applied "improvement" with an eye towards giving that term an ordinary meaning. See *Catanzaro v. Wasco Prod., Inc.,* 339 Pa.Super. 481, 489 A.2d 262, 265 (1985) (a skydome/skylight is an improvement); *Mitchell v. United Elevator Co.,* 290 Pa.Super. 476, 434 A.2d 1243, 1249 (1981) (an elevator); *Fetterhoff v. Fetterhoff,* 354 Pa.Super. 438, 512 A.2d 30, 31 (1986) (same); *Goodrich v. Luzerne Apparel Mfg. Corp.,* 356 Pa.Super. 148, 514 A.2d 188, 189 (1986) (an electrical panel board); *McConnaughey v. Building Components, Inc.,* 401 Pa.Super. 329, 585 A.2d 485, 487 (1990) (a roof truss), allocatur granted, 527 Pa. 667, 593 A.2d 842 (1991); *Radvan v. General Elec. Co.,* 394 Pa.Super. 501, 576 A.2d 396, 397 (1990) (a weld and side trim machine).

In *Ferricks v. Ryan Homes, Inc.,* 396 Pa.Super. 132, 578 A.2d 441 (1990), the court held that plywood, later incorporated into a structure, is not an improvement to real property. It reasoned, "The plywood was simply a component part of a wall or floor which eventually made up the improvement on the real estate." 578 A.2d at 443. The unreasonable and extreme burden of imposing liability upon the manufacturers of every nut, nail or screw is manifest.

In *Noll v. Paddock Pool Builders, Inc.,* 416 Pa.Super. 284, 611 A.2d 219 (1992), the court addressed the issue whether starting blocks bolted to a swimming pool are an improvement to real property. Borrowing the analysis the Pennsylvania Commonwealth Court used to define "real property" for the purposes of sovereign immunity (see Pa.C.S. § 8541 et seq.), the court categorized "improvement to real property" into three groups. 611 A.2d at 224. The first includes items that are manifestly furniture, as distinguished from improvements, and not affixed to the real property. The second includes items that are so annexed to the property that they cannot be removed without materially injuring the items or the real estate. The third includes items that, albeit physically connected to the property, are so affixed as to be removable without destroying or injuring them or the real estate; these become part of the realty or remain personalty, depending on the intention of the annexing party at the time of annexation. *Id.* at 224, citing *Canon–McMillan School District v. Bioni,* 127 Pa.Commw. 317, 320–21, 561 A.2d 853, 854 (1989). As to intent, "it is not so much what a particular party intended his legal

rights to be, as it is what intended use of the property was manifested by the conduct of the party." *Id.* at 225, quoting *Bioni,* 561 A.2d at 854–55 (internal quotation marks omitted).

While these guidelines are an "aid [to] our Court's analysis of what constitutes an improvement to real property," *id.,* until adopted by the Pennsylvania Supreme Court they do not finally define "improvement." Ultimately, "the determination of what constitutes an improvement to real property is made on a case-by-case basis." *Id.* at 222.

This above-ground swimming pool is an improvement to real property. If we apply the *Noll* guidelines, the pool fits into category three. That is, the parties intended to annex the pool as a part of the real property. While Hoffinger makes much of the fact that the pool came in a box, the pool has never been moved or disassembled. Several homeowners have gone to the trouble of building decks around the pool, including the defendant Hubert who built an elaborate, three-tiered deck.

Also, a qualitative examination of the pool's physical features shows that it is an improvement to real property. It is a large, stationary object on the land, measuring 15 by 30 feet in length and width and holding thousands of gallons of water. It has remained on the property for the past 20 years. It required a permit, land preparation (including foundation), adds to the value of the real estate, and cost $875 twenty years ago. It is generally more akin to a "finished product such as window, skydome, or elevator [which] is meant for use solely as a fixture, as an improvement to real estate," see *Ferricks,* 578 A.2d at 445, than a component material such as plywood. Cf. *Radvan,* 576 A.2d at 397 (weld and side trim machine is improvement to real property; it had been in place for more than 30 years, had never been moved, was bolted to the floor and connected to conduit piping for power, and was so heavy it would be difficult to dismantle).

■ The remaining issue is whether Sylvan is a protected person. The statute identifies its class not by the status or occupation of its members, but rather immunizes from liability "any" person lawfully performing or furnishing the activities listed in the statute. *McCormick,* 564 A.2d at 910. "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Id.* (quoting *Leach v. Philadelphia Savings Fund Society,* 234 Pa.Super. 486, 340 A.2d 491, 493 (1975)).

In *Catanzaro* the Pennsylvania Superior Court held that the manufacturer/seller of a skydome fell within the purview of the statute. The appellant there argued that the correct test was whether the supplier customized its product to the real estate and assisted in the installation. In rejecting this argument, the court noted that it had in *Mitchell* rejected the narrow view that the manufacturer of a ready-made item, merely incorporated into the building, was not protected. See *Mitchell,* 434 A.2d at 1249 ("that the basic design of the elevator may be identical in different buildings does not render the elevator any less an improvement to real estate"). The court concluded that the manufacturer/seller planned, designed and built the skydome, and therefore was a protected person. 489 A.2d at 266.

The inquiry is whether Sylvan lawfully furnished or performed any of the listed activities in the statute. *Leach,* 340 A.2d at 493. It is irrelevant whether Sylvan actually installed the pool, because the Pennsylvania Superior Court has rejected the notion that the supplier of a product "had to assist in its installation." *Catanzaro,* 489 A.2d at 266.

The statute provides that any person "furnishing the ... supervision or observation of construction, or construction" of any improvement to real estate is protected. Sylvan furnished the construction; it sold the pool and, according to Fleck, contracted with someone to construct the pool. One homeowner testified that he had "left the installation totally up to KDI Sylvan." Under the plain reading of the statute, Sylvan is within the class of persons protected by the statute. We hold that the claim against Sylvan was time-barred and

the directed verdict for Sylvan was proper under the Pennsylvania statute of repose.

Sylvan brought the purported corporate successors of the pool manufacturers (S & V, Gibraltar, and Poseidon) into this action. No other party has a claim against these third-party defendants. So, with Sylvan out of this case, they are too. Consequently, although the three defendants appeal the district court's refusal to enter summary judgment for them, we need not reach this issue because it is now moot.

## B.

### Directed Verdict For Nichols

■ The district court directed verdict for Nichols in its indemnification action against Hoffinger. In denying a post-judgment motion for reconsideration, the district court noted that Hoffinger waived the right to complain. The parties do not dispute that Hoffinger failed to object to the entry of directed verdict.

■ It is axiomatic that a party who fails to object to errors or to raise issues at trial waives the right to complain on appeal. This requirement is imposed so that courts have an opportunity to avoid errors, thus obviating an appeal. See Wright & Miller, 9 Federal Practice & Procedure, § 2472 at 454 (1971). If the trial court grants a motion for directed verdict, "an adverse party who did not object to the lack of grounds in the trial court may not raise this point in the appellate court." *Id.* § 2533 at 582.

■ We may, however, review a waived issue under exceptional circumstances. *Franki Found Co. v. Alger–Rau & Assoc., Inc.*, 513 F.2d 581, 586 (3d Cir.1975). Exceptional circumstance have been recognized where the public interest requires that the new issue be heard on appeal or when manifest injustice would result from the failure to consider the new issue, *Altman v. Altman*, 653 F.2d 755, 758 (3d Cir.1981), or where it is apparent that counsel failed to object to a fundamental and highly prejudicial error resulting in a miscarriage of justice, *Freifield v. Hennessy*, 353 F.2d 97, 99 (3d Cir.1965).

■ Hoffinger contends that its counsel's failure to object was a fundamental and highly prejudicial error resulting in a miscarriage of justice. The essence of this argument is that because counsel's error adversely affected its case, we should consider the merits of the issue. Many errors by one's counsel prejudice a case; but few are said to be a miscarriage of justice. Mere prejudice is insufficient to retrieve an abandoned issue. This trial colloquy further refutes Hoffinger's argument:

> Mr. Mahoney [counsel for Nichols]: As such your Honor, putting the issue of indemnity to the Jury I think would be a fruitless exercise and I would ask the Court to direct the Jury to return a verdict for Nichols in the event that they find the liner to be defective.
>
> The Court: All right, Mr. Korn?
>
> Mr. Korn [counsel for Hoffinger]: I think that in terms of the issues raised by Mr. Mahoney that *the Court, as a matter of law, without having the Jury do it, can, at the appropriate time, direct a verdict* as he is requested, because I will agree that up until the time—
>
> The Court: Right.
>
> Mr. Korn: —there was certainly evidence to keep his client in the case for a separate reason. *But it's not a Jury question.*
>
> \* \* \* \* \* \*
>
> The Court: Then it's appropriate to grant the directed verdict for Nichols in this case.

(Emphasis added.) The next day, the district court entered the directed verdict. Other than correcting the district court as to the proper business name to be entered, counsel for Hoffinger did not object.

■ When a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession. *Meiners v. Moriarity*, 563 F.2d 343, 352 (7th Cir.1977); *Alexander v. Town & Country Estates, Inc.*, 535 F.2d 1081, 1082 & n. 1 (8th Cir.1976). See *Childs v. Franco*, 563 F.Supp. 290, 292

(E.D.Pa.1983) ("If unequivocal, an admission of counsel during the course of trial is binding on the client."); _Sule v. Workmen's Compensation Appeal Bd._, 121 Pa. Commw. 242, 550 A.2d 847, 849 (1988) ("It is well settled that an admission of an attorney during the course of a trial is binding upon his client."). We find no miscarriage of justice or any other exceptional circumstances, and hold that Hoffinger waived the right to contest the district court's directed verdict for Nichols. In any event, we have also reviewed the substance of Hoffinger's arguments and conclude they are meritless.

## C.

### _Attorney's Fees_

 Although Nichols was brought into this suit on a strict liability theory for selling a defective product that Hoffinger manufactured, and although Hoffinger agreed to the entry of a directed verdict in Nichols' indemnification action, the district court denied Nichols' claim for attorney's fees and costs.

 The general rule is that an indemnitee may recover attorney's fees and costs incurred in defense of the liability indemnified against from the indemnitor. _A.C. Israel Commodity Co. v. American-West African Line, Inc._, 397 F.2d 170, 172 (3d Cir.1968). Pennsylvania law is no different. The Pennsylvania Supreme Court has favorably cited the Restatement (Second) of Torts, § 914(2) (1976), which provides:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for the loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

_Vattimo v. Lower Bucks Hosp., Inc._, 502 Pa. 241, 465 A.2d 1231, 1235 (1983). The court has also held that "an indemnitee may recover attorney's fees and costs from the indemnitor notwithstanding the fact that these expenses have already been paid by the indemnitee's insurance carrier." _Boiler Eng'r & Supply Co. v. General Controls, Inc._, 443 Pa. 44, 277 A.2d 812, 814 (1971). The court, however, limited these fees to defense litigation and did not extend them to the indemnification litigation. _Id._ Accord _Fisher v. United States_, 299 F.Supp. 1, 34 (E.D.Pa.1969), reversed on other grounds, 441 F.2d 1288 (3d Cir. 1971); _Papas v. Kohler Co., Inc._, 581 F.Supp. 1272, 1273 (M.D.Pa.1984). Thus, in an indemnification action under Pennsylvania law, the indemnitee is entitled to attorney's fees and costs incurred in the underlying defense litigation.

The district court erred by denying Nichols' request for attorney's fees. We will reverse this portion of the district court's order and judgment and remand the cause to the district court.

## D.

### _Duty To Warn_

 The district court submitted to the jury the issue whether the replacement pool liner was defective because Hoffinger failed to affix depth markers and warnings about the dangers of diving. Hoffinger contends that because a replacement pool liner is a component part that is later incorporated into a final product, the manufacturer of a pool liner owes no duty to warn as a matter of law.

In _Jacobini v. V. & O. Press Co._, 527 Pa. 32, 588 A.2d 476 (1991), a die set lacked warnings to caution that dies should be used only in areas equipped with barrier guards. The die set was later incorporated into a power press whose barrier guard was removed. Plaintiff was injured when he misaligned the tool holder in the die, causing parts of the die to be expelled from the press. Plaintiff sued under a failure to warn theory.

The Pennsylvania Supreme Court held that because the evidentiary record was insufficient to support submitting a failure to warn theory to the jury, the plaintiff failed to demonstrate the alleged defect proximately caused the injury. 588 A.2d at 478. The court added dictum, however,

that a manufacturer's duty to warn is limited when it supplies a component of a final product that is later assembled by another party and the dangers are associated with the use of the finished product. *Id.* at 479, citing *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 523 Pa. 1, 564 A.2d 1244 (1989) (manufacturer of an electrical control system had no duty to guard a switch in the system because the system was not defective and the danger arose from the placement of the system in the final product by another manufacturer). See *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898 (1975) (manufacturer is not liable if the product, safe when it leaves the maker's hands, is *made* unsafe by subsequent changes in the stream of commerce). "This is particularly true where the component itself is not dangerous, and where the danger arises from the manner in which the component is utilized by the assembler of the final product, this being a matter over which the component manufacturer has no control." *Jacobini*, 588 A.2d at 479.

The *Jacobini* court explained that the die set manufacturer "cannot be expected to foresee every possible risk that might be associated with use of the completed product, the die, which is manufactured by another party, and to warn of dangers in using that completed product in yet another party's finished product, the power press." *Id.* at 480. It would be unreasonable and unwarranted to recognize liability in such a tenuous chain of responsibility. *Id.*

The limitation envisioned in *Jacobini* is inapplicable here. A replacement pool liner is not the type of component part that would relieve a manufacturer's duty to warn: It has but one purpose, to replace an existing pool liner. Since Hoffinger knew that its liner would ultimately be incorporated into a pool, and nothing else, it can then reasonably foresee the potential risk of failing to affix warning labels.

The replacement liner is not a generic component part, but is really a separate product with a specific purpose and use. Surely if the maker of such things as brake systems, elevators, and artillery firing pins, are not immune from liability simply because those products are later incorporated into something else, Hoffinger is likewise not immune from liability. See *Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992) (manufacturer of helicopter engine found liable along with manufacturer of helicopter).

Furthermore, in *Jacobini*, unlike here, the component part was incorporated into a final product made defective by another manufacturer. The flaw in Hoffinger's argument is shown by a simple example. Even if we assume that the pool here was manufactured *with* warnings, it is foreseeable that the pool liner will be replaced some day. If the manufacturer fails to affix warnings, as here, the pool becomes defective and dangerous. Someone must bear the risk of injury. To shift the burden to the manufacturer of the pool, the "finished" product, is unreasonable because it manufactured and sold a safe pool.

Since one can foresee that the liner can create a danger from its inherent condition, the risk should fall on the manufacturer of the liner and not the pool manufacturer. Fairness, economic sense, and policies underpinning strict liability demand this result. Indeed, the manufacturer of the pool in this example is no different than the manufacturer of the component part in *Jacobini* and shares the same predicament contemplated there: "no basis [would exist] for requiring the [pool] manufacturer . . . to investigate the use of its [pool] . . . which by itself was inert and safe." See 588 A.2d at 480.

Hoffinger further contends that as a matter of law it had no duty to warn because "the replacement pool liner, itself, could [not] cause the injuries complained of" and because "the danger arises when the component is incorporated into the final product." Br. 12, 13. While it is true that the danger arises only when incorporated into the pool and filled with water, when the danger arises is irrelevant. The only issue is whether the liner was sold in a defective condition because it had no warnings.

Moreover, we are not persuaded by the contention that a pool liner is an inert, innocuous thing simply because by itself, it is physically incapable of injuring a consumer. To hold otherwise implies that "unreasonably dangerous" under Section 402A requires that the product itself actually exert the injury-causing, physical force. But even dynamite is inert, unless ignited. Although a replacement pool liner does not explode, crush, drive, or exert any other physical force, it may through a chain of not so remarkable events cause serious injuries.

The jury was asked in special interrogatories: "Do you find that the replacement vinyl liner sold by Nichols Swim Pools, Inc. was defective, that is, did it lack any element necessary to make it safe for its reasonably foreseeable use?" The jury answered yes. We hold that as a matter of law Hoffinger is not relieved of a duty to warn.

### E.

*Open And Obvious Danger*

■ The district court allowed the jury to consider whether the pool liner was defective because it lacked depth markers and warnings about the dangers of diving. Hoffinger contends that the danger associated with diving into a body of water of uncertain depth is open and obvious, in other words, that the axiom "look before you leap" should be the law applicable to this case. We disagree.

■ A "defective condition" includes the lack of adequate warnings for a product's safe use. *Id.* at 478; *Berkebile*, 337 A.2d at 902. See *Thomas v. Arvon Products Co.*, 424 Pa. 365, 227 A.2d 897, 899 (1967) (failure to warn in a negligence action). If a product is defective absent such a warning, and the defect is a proximate cause of the plaintiff's injury, the manufacturer is strictly liable. *Berkebile*, 337 A.2d at 902. If, however, the danger is open and obvious, there is no duty to warn. *Sherk v. Daisy–Heddon*, 285 Pa.Super. 320, 427 A.2d 657, 660 (1981), reversed on other grounds, 498 Pa. 594, 450 A.2d 615

(1982); *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa.Super. 220, 545 A.2d 906, 911 (1988), quoting *Sherk*, 427 A.2d at 660. See *Rice v. Kring*, 310 Pa. 550, 165 A. 833, 835 (1933) (no duty to warn of open and obvious danger in a negligence action).

■ Unlike the assumption of the risk defense, which requires actual subjective knowledge, *Berkebile*, 337 A.2d at 901; *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 533 (1988), whether a danger is open and obvious is an objective inquiry, not dependent upon the actual knowledge of the user or his actual awareness of the danger. *Sherk*, 427 A.2d at 661 (1981); *Ellis*, 545 A.2d at 911, quoting *Sherk*, 427 A.2d at 661. We inquire whether knowledge of the danger would be possessed by "the ordinary consumer who purchases [or uses the product], with the ordinary knowledge common to the community as to its characteristics." *Sherk*, 427 A.2d at 661, quoting Restatement § 402A, comment (i). For instance, "[i]f the product is one customarily used by children, the danger must be one which children would be likely to recognize and appreciate in order to prevent them from recovering for a product related injury on the grounds that the danger was open and obvious." *Id.*

■ Although prudence mandates that one check the water's depth, courts gauge the duty to warn not by the "reasonable consumer," *Berkebile*, 337 A.2d at 902, but by the "ordinary consumer." See *id.* at 899; *Lewis v. Duff–Norton Co.*, 515 Pa. 334, 340, 528 A.2d 590, 593 (1987); Restatement § 402A, comment (i). Unlike the law of negligence, product liability laws do not impose a duty upon the consumer; they instead encourage manufacturers to make safe products even for the careless and unreasonable consumer. "A plaintiff cannot be precluded from recovery in a strict liability case because of his own negligence." *Berkebile*, 337 A.2d at 901. The inquiry is whether the product is defective for ordinary use and foreseeable misuse.

It is clearly foreseeable that consumers, children and adults alike, would dive into a pool of unknown depth. Indeed, there was testimony that previous owners of this pool

maintained a vigil to watch for divers. One owner testified, "The only thing we ever did was, we were always in the pool if someone was there. And we had, of course, we allowed the children to jump into the pool, but under no circumstances were they allowed to dive into the pool." Another owner testified that on several occasions he saw children dive head first into this pool. When asked what he did when he saw people dive, he said, "I told them don't, don't dive in."

Depth markers and warning labels convey crucial information about the dangers of the pool. They tell one who might think the pool is deep enough that indeed it is not. These measures are necessary to avoid grievous bodily injuries. In *Mucowski v. Clark*, 404 Pa.Super. 197, 590 A.2d 348 (1991), the pool lacked warnings, but the plaintiff had used the pool before and knew its depth. The court held that plaintiff's "foolhardiness," diving into a pool that he knew was four feet deep, was the legal cause of the injury. The court cited and discussed these cases: *Hensley v. Muskin Corp.*, 65 Mich.App. 662, 238 N.W.2d 362 (1975); *Dailey v. Major Pool Equip. Corp.*, 30 N.Y.2d 846, 335 N.Y.S.2d 89, 286 N.E.2d 471 (1972); *Colosimo v. May Dep't Store Co.*, 466 F.2d 1234 (3d Cir.1972). In each of these cases, plaintiffs knew that the pool was shallow. Here, of course, Fleck thought that this pool was six feet deep. Because the pool was surrounded by elaborate decking, which concealed its sides, a jury could reasonably have concluded that Fleck's perception was plausible. Based upon the appearance of the pool from the photographs in the record, as surrounded by the elaborate decking, and Hubert's testimony that sometimes the pool looked twelve feet deep, a jury could have reasonably concluded that such a perception was plausible. While Fleck may still have been imprudent to do what he did, we cannot say that "foolhardiness" was the cause of the accident. Fleck testified that had there been warnings about the depth of the pool or the danger of diving into this pool, he would not have attempted a dive.

The danger was not open and obvious; so the product was defective, and there was a duty to warn. Hoffinger failed to do so, and the district court properly allowed the jury to consider whether the replacement pool liner lacked an essential element to make it safe.

## F.

### Fleck's Comparative Negligence

The district court refused to bar recovery or reduce Fleck's verdict although the jury found Fleck to have been 64% negligent. Since determining whether a duty to warn exists "necessarily involves negligence principles such as reasonableness or foreseeability," *Ellis*, 545 A.2d at 912–13, Hoffinger reasons that these negligence principles reduce its liability under the comparative negligence scheme of damage apportionment, or bar Fleck's recovery under the Comparative Negligence Act, 42 Pa.C.S. § 7102(a).

It is true that the determination of a duty to warn necessarily applies negligence principles, but it is the *defendant's* "negligence" that is scrutinized. See *Ellis*, 545 A.2d at 913 (inquiry into duty to warn revolves around whether "the supplier knew, or ... should have known, of the danger, or where the dangerous use ... was reasonably foreseeable"). Moreover, even if a plaintiff's negligence is in any way relevant to determine a duty to warn, that does not mean that it is also relevant to damages. The argument that Fleck is barred from recovery under the Comparative Negligence Act in this strict liability case, where the jury expressly found that the product sold was defective, is utterly without merit. *Moran v. G. & W.H. Corson, Inc.*, 402 Pa.Super. 101, 586 A.2d 416, 419 (1991) (the Comparative Negligence Act does not apply to actions sounding in strict liability). See *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 435–44 (3d Cir.1992) (concluding, after a thorough review of Pennsylvania law, that evidence of plaintiff's negligence is inadmissible in a strict liability case); *McCown v. International Harvester Co.*, 463 Pa. 13, 342 A.2d 381, 382 (1975) (rejecting both contributory neg-

ligence as a defense to strict liability and a comparative negligence scheme of damage apportionment); *Berkebile*, 337 A.2d at 901 (plaintiff cannot be precluded from recovery in a strict liability case due to his own negligence); *Remy v. Michael D's Carpet Outlets*, 391 Pa.Super. 436, 444–46, 571 A.2d 446, 451 (1990) (plaintiff's comparative negligence is inadmissible in product liability action), allocatur granted, 527 Pa. 634, 592 A.2d 1301 (1991).

■ The argument that the amount of the jury verdict should be reduced by Fleck's comparative negligence is equally frivolous. Hoffinger relies on *Lewis v. Timco, Inc.*, 716 F.2d 1425 (5th Cir.1983), which held that notwithstanding the strict liability theory of the case, comparative fault of the plaintiff is applied to reduce the liability of the manufacturer of a defective product. This case is significant, Hoffinger says, because the Pennsylvania Superior Court in *Walton v. Avco Corp.*, 383 Pa.Super 518, 557 A.2d 372, 387 (1989), relied on it to hold that a trier of fact can employ a comparative causation doctrine when apportioning liability between two strictly liable defendants.

The problem is that the Pennsylvania Supreme Court overruled *Walton* on that precise issue. 610 A.2d at 462. The court believed that introducing concepts of fault in the damage-apportionment process would not serve the economic theory of Pennsylvania product liability laws "to place inevitable financial burdens on those best positioned to bear them." *Id.*

■ The Pennsylvania Supreme Court "has continually fortified the theoretical dam between the notions of negligence and strict 'no fault' liability. It would serve only to muddy the waters to introduce comparative fault into an action based solely on strict liability." *Id.* (citations omitted). We hold that in a case brought under Pennsylvania product liability laws, a plaintiff's comparative negligence is irrelevant either to bar recovery or to reduce the jury award.

## G.

### *Insurance Proceeds*

■ The Flecks petitioned the bankruptcy court to lift the automatic stay of 11 U.S.C. § 362 in Nichols' bankruptcy, representing that any recovery "will be limited solely to the proceeds of the applicable insurance of" Nichols. The bankruptcy court lifted the stay, ordering that any judgment against Nichols "will be limited solely to the proceeds of applicable insurance available to Nichols Swim Pools, Inc." After Hoffinger was found liable, the district court refused to mold the jury verdict to an amount equal to the insurance proceeds available to Nichols. We believe the court erred.

■ The Flecks' representation to the bankruptcy court judicially estops them in their action against Nichols because they cannot assert a position in this proceeding inconsistent with the one they previously asserted. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.1988). See generally 18 Wright & Miller, Federal Practice and Procedure, § 4477 (1981).

> It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). Judicial estoppel looks to the connection between the litigant and the judicial system. *Oneida*, 848 F.2d at 419; *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir.1990). It preserves the integrity of the courts by preventing litigants from "playing fast and loose with the courts." *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953). See *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987); *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1220 (6th Cir.1990). Thus, it is intended to protect the courts rather

than the litigants. *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990).

The bankruptcy court's order makes clear that that court lifted the automatic stay because the Flecks represented that any judgment will be limited to the insurance proceeds. A party who petitions a bankruptcy court to lift a stay by agreeing to limit the recovery against the protected debtor cannot later collect in its entirety on a judgment that exceeds the agreed upon limit. See *Chance v. Board of Examiners*, 561 F.2d 1079, 1092 (2d Cir. 1977) (parties who make an agreement with the court are bound by their representations).

Although the Flecks cannot collect money in excess of the insurance amount from *Nichols,* there remains the issue of whether they can collect the difference between the amounts of the judgment and the insurance proceeds from *Hoffinger* by its indemnity to Nichols. The Flecks contended before the district court that they have agreed with the bankruptcy court not to execute upon their judgment against Nichols except insofar as the judgments can be collected from "amounts which can be recovered by way of indemnity against Hoffinger or its insurance carrier, thus preserving the general assets of Nichols to satisfy the claims of its other creditors." So, the Flecks believe that they can recover the difference by way of indemnity from Hoffinger to Nichols. We disagree.

Indemnity is a common law equitable remedy that shifts the entire loss from one who has been compelled to pay a judgment to another who should bear it. *Builder's Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951). See Restatement of Restitution § 76 (1962). The rights and obligations arising from indemnity exist between one who discharged the debt and one who should have discharged it. It is well settled that before any right of indemnification arises, the indemnitee must in fact pay damages to a third party. *F.J. Schindler Equipment Co. v. The Raymond Co.*, 274 Pa.Super. 530, 532, 418 A.2d 533, 534 (1980). See *National Liberty Ins. v. Kling Partnership*, 350 Pa.Super. 524,

504 A.2d 1273, 1278 (1986). The reason for this is obvious: since indemnity shifts the loss, no right accrues until one suffers a loss by paying damages to a third party.

Payment by the indemnitee to the third person "may have been of the entire amount or it may have been a partial payment." Restatement § 76 comment c. So, where one is entitled to be indemnified, under Pennsylvania law that person "should receive reimbursement limited to the amount of his net outlay properly expended because the payor became a party to the transaction through the fault of the other." *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.*, 471 F.Supp. 1059, 1067 (M.D.Pa.1979), affirmed without opinion 620 F.2d 287 (3d Cir.1980). See Restatement § 80 (the indemnitee "is entitled to reimbursement, limited to the amount of his net outlay properly expended"). Payment is limited to the amount paid because "[a]lthough there is no fiduciary relation between the parties, the relation is one which is regarded as involving mutual confidence and it would be unfair for the payor to profit at the expense of the principal obligor." Restatement § 80 comment (a).

No matter what the Flecks may have intended, they cannot recover more than what they agreed. The Flecks did not bring a separate claim against Hoffinger. Nichols sued to be indemnified for its exposure. Hence, Hoffinger's liability runs only to Nichols and only to the extent of Nichols' exposure. Hoffinger thus has no legal obligation to pay the judgment to the Flecks. To allow the Flecks to collect the full amount of the judgment by way of indemnity would allow them to do indirectly that which they cannot do directly. Nichols' right of indemnity is to be covered for its actual loss, not the Fleck's. Hoffinger's liability to Nichols is the amount of money Nichols was obligated to pay the Flecks, that is, the amount of insurance proceeds available to Nichols. We will reverse and remand to mold the jury verdict to the amount of the available insurance proceeds.

## III.

## CONCLUSION

We summarize our decision as follows:

1. The district court correctly directed verdict for Sylvan and against Fleck under the statute of repose;

2. Hoffinger has waived any right to contest the district court's directed verdict against Hoffinger in Nichols' indemnification action;

3. The district court erred when it refused to award Nichols attorney's fees and costs incurred in the underlying defense litigation in Nichols' indemnification action;

4. A manufacturer of a replacement pool liner has a duty to warn of the depth of the pool or of the dangers of diving;

5. A manufacturer of a replacement pool liner is not relieved of a duty to warn because the dangers of diving into this pool of unknown depth is not open and obvious;

6. Pennsylvania neither recognizes a contributory negligence defense to bar recovery in a strict liability case nor authorizes reducing a plaintiff's damages under a comparative negligence theory;

7. The district court erred when it refused to reduce the jury verdict to an amount equal to the insurance proceeds available to Nichols.

We will therefore reverse the denial of attorney's fees and costs for Nichols and remand for further proceeding, vacate the judgment entered for the Flecks with respect to the damage award and remand with instructions to mold the jury verdict to an amount equal to the insurance proceeds available, and affirm the balance of the district court's order.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, and LEWIS, Circuit Judges

## SUR PETITION FOR REHEARING

### Dec. 31, 1992.

The petition for rehearing filed by third-party defendant-appellee/cross-appellant, Doughboy Recreational, Inc., a Division of Hoffinger Industries, Inc., in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.