In re MONROEVILLE DODGE, LTD.,
d/b/a Dodgeland, Debtor.

CHRYSLER CORPORATION, Movant,

v.

MONROEVILLE DODGE, LTD.,
d/b/a Dodgeland, Respondent.

Bankruptcy No. 93–22587–BM.
Motion No. 94–058M.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 11, 1994.

Karen Y. Bonvalot, Lauer & Perkins, P.C., Sewickley, PA, for respondent/debtor.

James F. Grenen, Kincaid, McGrath & O'Keefe, P.C., Pittsburgh, PA, James B. Daniels, Daniels & Kaplan, Kansas City, MO, for movant Chrysler Corp.

Owen W. Katz, Bernstein & Bernstein, P.C., Pittsburgh, PA, for Committee of Unsecured Creditors.

Reed J. Davis, Davis Reilly, P.C., Pittsburgh, PA, for Chrysler Credit Corp.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Chrysler Corporation (hereinafter "CC") has brought a motion seeking payment of its chapter 11 administrative claim and permission to satisfy the claim pursuant to a provision in an assumed executory contract which authorized CC to "apply" any "credit" due and owing to debtor to any debt owed by debtor to CC.

Debtor does not object to allowance of CC's administrative claim in the amount requested. It does object, however, to CC's request to satisfy the claim pursuant to the assumed executory contract. According to debtor, the provision in question is not enforceable because it violates a provision of the Bankruptcy Code.

CC's motion shall be granted and debtor's objection thereto shall be overruled for reasons set forth below.

–I–

### FACTS

Debtor formerly operated an automobile dealership wherein it sold and serviced Dodge automotive vehicles and products.

CC is the exclusive manufacturer of Dodge motor vehicles and products and provides warranty services under its name and trademark.

On June 27, 1991, debtor and CC executed a sales and service agreement (hereinafter "agreement").

Paragraph 21 of the agreement required debtor, as dealer, to pay for products it sold under the agreement "... by such method and/or in such manner as CC may announce from time to time or approve in writing".

Paragraph 24 of the agreement provided in relevant part as follows:

CC may apply to any amount owed by DEALER to CC or to any of CC's affiliates any credit owing to DEALER by CC or any of its affiliates....

Debtor has not made any payments due and owing to CC under the agreement since June 28, 1993.

On July 23, 1993, debtor filed a voluntary chapter 11 petition. Filing of a chapter 11 petition, instead of a chapter 7 petition, was premised upon debtor's anticipated sale of the dealership to a third party.

On August 3, 1993, debtor brought a motion to assume the above agreement with CC as an executory contract. The motion was filed to facilitate the anticipated sale of the dealership. Without the agreement, debtor had no prospect of selling its business and was faced with conversion to chapter 7.

A hearing on debtor's motion was held on September 7, 1993. Debtor and The Committee of Unsecured Creditors ("Committee") were the only parties to appear. CC, which stood to gain considerably from assumption, was conspicuously absent.

The court voiced its concern at the hearing that, in light of paragraph 24 of the agreement, assumption might impose a substantial economic burden upon the bankruptcy estate which could jeopardize a successful reorganization. Debtor solemnly assured the court that assumption of the agreement would not impose an additional economic burden on the bankruptcy estate and would facilitate, rather than jeopardize, a successful reorganization.

A modified order was entered on September 7, 1993 granting debtor permission to assume its agreement with CC. The following language, however, was added by the court to the order:

This Order is entered based upon assertions of counsel indicating that this assumption has no economic effect on the debtor or its reorganization.

The order was not appealed by any interested party. In addition, neither debtor nor CC came forward to inform the court that debtor's above representation was incorrect. Debtor, in particular, remained silent.

Sale of the dealership, including the assumed agreement with CC, to a third party was approved by this court on November 23, 1993.

Debtor's roseate projections concerning the benefit to the bankruptcy estate from the sale of the dealership turned out to be inaccurate. The sale has not netted as much as debtor apparently had projected. Insufficient funds will be available with which to pay all chapter 11 administrative claims in full under a plan of reorganization, let alone to make a meaningful distribution to general unsecured creditors.

Debtor's representation to the court on September 7, 1993 that assumption of the agreement would not impose an additional economic burden on the bankruptcy estate also has turned out to be incorrect. It is undisputed that the total pre- and post-petition debt owed to CC under the assumed agreement is $157,130.31. Of that amount, the sum of $97,824.37 arose post-petition. The remaining debt of $59,305.94 arose pre-petition.

The amount of the "credit" that CC owes to debtor under the assumed agreement is not of record.

On January 11, 1994, CC brought a motion entitled *First Request Of Chrysler Corporation For Payment Of Administrative Claims Arising Under Executory Contract Assumed By The Debtor Under 11 U.S.C. § 365(a) And For Authority To Exercise Rights Of Set–Off And/Or Recoupment Conferred Under ¶ 24 Of Such Contract.*

CC asks in its prayer for relief that: (1) a chapter 11 administrative claim in the total amount debtor owes to it be allowed; and (2) it be permitted "to pay and satisfy said administrative claim in the manner prescribed under ¶ 24 of the Sales and Service Agreement". CC seeks, in other words, to "apply" the post-petition "credit" it owes to debtor against both pre- and post-petition debts owed to it by debtor.

Chrysler Credit Corporation, a subsidiary of CC with a perfected security interest in virtually all of debtor's assets, does not oppose CC's motion, provided that CC's claim is not paid outside of a confirmed plan of reorganization or prior to final distribution in a chapter 7 proceeding.

The Committee does not oppose CC's motion and has stated that it "defers" to debtor concerning any dispute as to the amount of CC's administrative claim.

The only objection to CC's motion surprisingly comes from debtor. While debtor does not object to CC's request that it be allowed an administrative claim it does object to CC's request to satisfy its claim pursuant to paragraph 24 of the assumed agreement. According to debtor, the *cum onere* principle is not ironclad and exceptionless. It does not apply when its application would violate a provision of the Bankruptcy Code. Paragraph 24 is not enforceable, debtor argues, because it violates 11 U.S.C. § 553 and because it is not allowed under the common law doctrine of recoupment.

As has been noted, sufficient funds are not available with which to pay administrative claimants in full. Debtor has proposed in its amended chapter 11 liquidating plan, which has not yet been confirmed (and may never be), paying chapter 11 administrative claims on a *pro rata* basis. General unsecured creditors will share on a *pro rata* basis from an administrative claim which debtor's principal has agreed to assign to them. Allowing CC to satisfy its administrative claim in full, as opposed to on a *pro rata* basis, will further decrease the *pro rata* distribution to other administrative claimants and, ultimately, to general unsecured creditors.

An initial hearing on CC's motion and debtor's objection thereto was held on February 15, 1994. CC stated at the hearing that it did not seek early payment of its claim outside of a confirmed chapter 11 plan or prior to final distribution in a chapter 7 proceeding. At the request of CC, the hearing was continued until March 16, 1994 so that CC could offer evidence concerning the amounts of the pre- and post-petition debts owed to it under the assumed agreement.

–II–

## ANALYSIS

■ As has been noted, debtor does not object to CC's request for allowance of an administrative claim in the full amount requested.[1] Debtor does object, however, to CC's request to satisfy its claim in full pursuant to paragraph 24 of the assumed agreement by "applying" post-petition "credit" to which debtor is entitled to the pre- and post-petition debts owed to it by debtor. Debtor argues that paragraph 24 is not enforceable because it violates 11 U.S.C. § 553 and because it is not allowed under the common-law doctrine of recoupment. The *cum onere* principle, debtor maintains, does not apply to a provision of an assumed executory contract when its application would result in a violation of a provision of the Bankruptcy Code.

Debtor's argument must be rejected for various reasons.

1. Obligations arising under contracts which are executory when a bankruptcy petition is filed are payable as an administrative priority expense if

### A. *Cum Onere* Principle

■ The principle that an executory contract assumed in a bankruptcy proceeding is accepted *cum onere* was embraced in this circuit over forty years ago:

> The trustee ... may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.

*In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir.1951). The debtor-in-possession "elected to stand in the Debtor's Shoes" and took Debtor's property "with all the liabilities attached" and "subject to all the equities to which it was liable". *Id.*

Subsequent enactment of the Bankruptcy Code in place of the former Bankruptcy Act has not vitiated the principle. The United States Supreme Court, for instance, affirmed its continuing vitality for executory contracts assumed pursuant to 11 U.S.C. § 365(a):

> Should the debtor-in-possession elect to assume the executory contract, ... it assumes the contract *cum onere*. *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (CA3 1951), and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate, 11 U.S.C. § 503(b)(1)(A) (1982 ed.).

*NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531–32, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984).

The United States Court of Appeals for the Third Circuit also recently reaffirmed the vitality of the *cum onere* principle and stated that the non-debtor party to the assumed executory contract unquestionably *may* "withhold" post-petition payments it owes to debtor against pre-petition debts owed to it by debtor:

> Assumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits. Consequently, if UMC assumed its provider agreement, there is no question that HHS could withhold

and when the contract has been properly assumed. *See In re Wheeling–Pittsburgh Steel Corp.*, 59 B.R. 129, 132 (Bankr.W.D.Pa.1986).

UMC's post-petition reimbursement in order to recover pre-petition overpayments without violating the automatic stay. *In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir.1992).

A few courts, none of whom have the authority to bind this court, have held that the *cum onere* principle does not apply when its application would result in violation of a specific provision of the Bankruptcy Code. *See In re McLean Industries, Inc.*, 132 B.R. 247, 265 (Bankr.S.D.N.Y.1991); *also In re David Orgell, Inc.*, 117 B.R. 574, 576 (Bankr. C.D.Cal.1990); *also In re Nitec Paper Corp.*, 43 B.R. 492, 497–98 (S.D.N.Y.1984).

Debtor urges this court to follow the lead of these cases and to hold that paragraph 24 is not enforceable because it violates § 553(a)[2] of the Code, which prohibits a pre-petition debt owed to a creditor from being set off against a post-petition obligation the creditor owes to debtor. *See In re University Medical Center*, 973 F.2d at 1080.

■ Were this court writing on a clean slate, it might be inclined to agree with debtor. The slate, however, is not clean. Debtor's invitation to embrace the proposition that the *cum onere* principle does not apply to a provision in an assumed executory contract that violates § 553(a) of the Code must be declined.

The above-quoted passage from *University Medical Center* is categorical and allows no room for the exception to the *cum onere* principle debtor advocates. As the court there asserts, "... *there is no question that* HHS could withhold UMC's post-petition reimbursement in order to recover pre-petition overpayments...." (emphasis added). 973 F.2d at 1075. The court of appeals evidently did not find it problematic that such an application of the *cum onere* principle would result in a violation of § 553(a) and instead addressed the more difficult question whether HHS had violated the automatic stay by so doing.

■ It follows *pari passu* that CC is permitted pursuant to paragraph 24 to "apply" post-petition "credits" to which debtor is entitled under the assumed agreement to CC's allowed administrative claim.

### B. *Judicial Estoppel*

Even if this court were to accept debtor's contention that paragraph 24 is not enforceable because it violates 11 U.S.C. § 553(a), debtor is judicially estopped from so arguing.

■ Judicial estoppel is designed to prevent a party from playing "fast and loose" with the court. *See Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953). It concerns the relationship between a litigant and the judicial system. *See Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir.1990). Its primary purpose is to protect the integrity of the court, not to protect litigants. *See Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121–22 (3d Cir.1992).

■ The doctrine of judicial estoppel precludes a party from asserting a position in a proceeding which is at odds with a position it previously had asserted. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). That party may be "estopped" from asserting the contrary position in the later proceeding. *See In re International Building Components*, 161 B.R. 764, 768 (Bankr.W.D.Pa. 1993).

---

2. 11 U.S.C. § 553(a) provides as follows:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

 

 Judicial estoppel applies only if that party has successfully asserted a contrary position in the prior proceeding. *Id.* That is to say, the court must have been persuaded in that proceeding to accept its position. *See In re Cheripka,* 26 CBC 2d 385, 397–98, 1991 WL 276289 (3d Cir.1991).

 Debtor assured the court at the hearing on its motion to assume the executory agreement with CC that assumption would have only the salutary effect of enabling it to sell its business and would impose no economic burden upon the bankruptcy estate. As the modified order entered on September 7, 1993 makes abundantly clear, the court accepted debtor's representation and approved the assumption based on said representation. Had debtor not so represented to the court, its motion to assume the agreement might not have been granted.

Debtor will not now be heard to assert the conflicting position that assumption of the agreement has been economically burdensome to the bankruptcy estate and that CC should not be permitted to apply paragraph 24 to the burden. Debtor previously said one thing in persuading this court to grant its motion to assume the executory contract and asserts something to the contrary now that CC seeks to enforce a provision of the contract that debtor sought permission to assume. Debtor cannot have it both ways. It is "playing fast and loose" with the court in so doing and therefore shall be judicially estopped from objecting to CC's motion.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 11th day of April, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** as follows:

(1) Chrysler Corporation is allowed a chapter 11 administrative claim in the amount of $157,130.31;

(2) Chrysler Corporation is authorized to satisfy said administrative claim pursuant to paragraph 24 of the sales and service agreement debtor assumed on September 7, 1993; and

(3) debtor's objection to Chrysler Corporation's motion is overruled.