**Willcerious WILLIS and Dennis Clark, h/w**

v.

**NATIONAL EQUIPMENT DESIGN CO., Tifco, Inc., and Reliance Electric, Inc.**

v.

**NABISCO BRAND, INC.**

Civ. A. No. 93–0801.

United States District Court, E.D. Pennsylvania.

Nov. 4, 1994.

Gavin P. Lentz, Philadelphia, PA, for plaintiff.

Michael J. Dunn, Philadelphia, PA, for Tifco.

John E. Salmon, Philadelphia, PA, for Reliance.

*MEMORANDUM AND ORDER*

DITTER, District Judge.

This case involves the responsibility of those who manufacture to another's specifications parts of an allegedly defective system, where plaintiff was injured by a completely different component manufactured by someone else. It comes before me on defendants' motions for summary judgment and arises out of injuries allegedly sustained by plaintiff, Willcerious Willis, at her place of employment. Defendant, Tifco, argues that it is entitled to summary judgment because its product did not cause Ms. Willis' accident, its product was not itself defective, and Tifco did not design or assemble the allegedly defective system of which its product was a component. Reliance, the other defendant, argues that it is entitled to summary judgment because there is no theory of liability by which it can be liable as the manufacturer of a generic, non-dangerous component part installed in the system by someone else. For the reasons stated below, both defendants' motions will be granted.

## I. FACTS

Plaintiff, Willcerious Willis, alleges that she was injured while working at a bakery facility in Philadelphia owned by Nabisco Brand, Inc. Ms. Willis worked on the cracker line at the bakery. She alleges that she was severely injured when her left breast and chest muscles were caught in and pulled between two rollers on a conveyor belt as she reached across the conveyor to clear a cracker jam.

The conveyor system consisted of two conveyors, one upper and one lower.[1] Packaged crackers moved along both conveyors, with crackers from the upper conveyor descending onto the lower conveyor at an area known as a transfer point. It is clear that Ms. Willis was injured by the upper conveyor component of the conveyor system. Plaintiff

and her husband sued Nedco and Tifco on theories of strict liability, negligence, and breach of warranty, alleging that the defendants manufactured and assembled the components that were incorporated into the conveyor system. Plaintiffs also sued Reliance on the same theories, alleging that its motor powered the conveyor system. Claims against Nedco were dismissed without prejudice.[2] Both Tifco and Reliance have moved for summary judgment. All parties agree that Pennsylvania law governs this diversity case.

## II. TIFCO'S MOTION FOR SUMMARY JUDGMENT

Tifco argues that its component, the lower conveyor, was neither defective nor the cause of Ms. Willis' accident. Moreover, Tifco maintains, it did not design or install the conveyor system into which its component was incorporated. Therefore, Tifco claims, it is entitled to judgment as a matter of law.

It is important to differentiate between what Tifco provided to Nabisco and where Ms. Willis was injured. Although plaintiff alleged in her complaint that Tifco had manufactured both the upper and lower conveyors, discovery has revealed that Tifco manufactured only the lower conveyor. Plaintiff does not contest this fact.[3]

The upper conveyor consisted of a fabric belt with rollers at either end that provided tension and belt movement. Although it was not present at the time of his inspection, plaintiff's expert opined that there had been a snub roller at the discharge end of the conveyor belt. A snub roller increases the tension on the belt and keeps the belt on the main roller. The snub roller and the discharge roller together created a "running nip point," a place where an object could be caught between them, and a place where there should have been a guard. It was here

---

1. The vertical distance between the upper and lower conveyors was not stated.

2. Claims against Nabisco, the third-party defendant, were also dismissed without prejudice, as were Dennis Clark's (Ms. Willis' husband) claims for loss of consortium.

3. Plaintiff's memorandum in opposition to Tifco's motion for summary judgment, for example, states that Tifco manufactured a 35' conveyor which ran underneath an existing angle conveyor (p. 2). Plaintiff's expert similarly remarks that "Tifco apparently utilized existing conveyor components, manufactured by an unknown manufacturer." (*Id.*, ex. 5).

that plaintiff was injured. The manufacturer of the upper conveyor portion of the conveyor system is unknown.

Tifco's conveyor (the lower component), on the other hand, is a tabletop, chain conveyor, a flat surface chain held together by hinges and driven by a sprocket. (Dep. of Donald Hinkle, p. 71). Mr. Hinkle, a former Tifco employee, stated that the tabletop conveyor manufactured by Tifco for Nabisco had no discharge rollers or snub rollers, that chain conveyors in general do not use rollers at all, and that rollers are used only on belt conveyors. (*Id.*, pp. 80, 81).

In his original report, plaintiff's expert, Paul R. Stephens, stated that the cause of Ms. Willis' accident was Tifco's failure to comply with OSHA standards requiring nip points to be guarded and emergency stop controls to be provided. Once it became clear that Tifco had not manufactured the upper belt conveyor which had the rollers and unguarded nip point, but had manufactured only the lower conveyor which was not alleged or opined to have ensnared Ms. Willis, Mr. Stephens revised his opinion. Plaintiff's expert now states that Tifco created the transfer point that required Ms. Willis to reach below the upper conveyor to clear jammed product. He asserts that Tifco created the dangerous conveyor system—unsafe because of the transfer point with the unguarded nip point—by providing the lower conveyor which, when installed in close proximity to the upper conveyor in accordance with Nabisco's drawings, created the dangerous transfer point, which caused Ms. Willis to reach under the upper conveyor to clear the jam, which ultimately caused her to be pulled into the rollers of the upper conveyor. (Pl.'s Mem. in Opp'n to Mot. for Summ. J., ex. 5 (letter of Dec. 20, 1993)).

## A. Strict Liability

Plaintiff's theory is that the proximity of the two conveyors created a dangerous transfer point that rendered the conveyor system defective, and that Tifco is responsible for three reasons: (1) because it defectively designed the conveyor system with an unguarded transfer point; (2) because it failed to warn of the danger, and (3) because its conveyor lacked OSHA-specified safety features.

I find that the evidence shows that Tifco did not design the conveyor system, had no reason to know and therefore warn that there might be hazards associated with the system, and that it complied with applicable OSHA requirements.

Plaintiff's theory of defect—that Tifco either created the defective transfer point or that Tifco knew of the defect but failed to provide a warning—is similar to that urged on the Pennsylvania Supreme Court in *Wenrick v. Schloemann–Siemag, A.G.*, 523 Pa. 1, 564 A.2d 1244, 1246 (1989). In *Wenrick*, plaintiff's decedent was killed while repairing an extrusion press when he was crushed by a retracting billet loader after the control switch for the loader was inadvertently triggered. The unguarded switch, designed by Cutler–Hammer, Inc., as part of an electrical control system, was positioned next to a pair of steps and was activated by a worker descending the steps. *Id.* Plaintiff's expert said that the defect was the unguarded condition of the switch and the location of the switch in close proximity to the steps. *Id.* Plaintiff argued that because Cutler–Hammer, using sequence diagrams and descriptions supplied by another defendant, participated in the design of the press, it must have been involved in positioning the switch. *Id.* 564 A.2d at 1246–47. The Pennsylvania Supreme Court said that such an inference was unreasonable: none of the diagrams supplied to Cutler–Hammer contained indications of dimensions or the layout of the completed press; all decisions as to where to place the steps and switch were made by another defendant; and the location of the switch was not dictated by Cutler–Hammer's design of the electrical system. As a result, the court ruled, plaintiff could not sustain a strict liability claim against Cutler–Hammer. *Id.* at 1247.

■ In this case, plaintiff's expert says that the defect for which Tifco is liable is the dangerous transfer point between the two conveyors. As in *Wenrick*, however, there is no evidence that Nabisco's design specifications contained dimensions and measurements as to the layout of the conveyors, that Tifco designed the two-conveyor system, that Tifco was involved in positioning the convey-

ors, that the proximity of the conveyors was dictated by Tifco's conveyor, or that Tifco installed its component or knew where and how it would be installed. Indeed, all the evidence is to the contrary.

It is unrefuted that Nabisco furnished to Tifco the design and specifications for the conveyor Tifco was to supply. (Aff. of William W. Fagant). Tifco was not at liberty to modify Nabisco's specifications. (Dep. of Charles E. Smith, p. 52). The purchase orders and standard specifications that Nabisco supplied Tifco, however, do not give the dimensions, measurements, or a detailed layout of the proposed conveyor system as a whole. (Tifco Mot. for Summ.J., ex. C). While plaintiff argues that Tifco received a *"complete layout of the conveyor system,"* the sketch she refers to is merely a line drawing labeled "general layout." (Pl.'s Mem. in Opp'n to Mot. for Summ.J., ex. 3). It does not indicate the measurements or placement of the two conveyors; nor does it indicate that the upper conveyor has rollers.[4]

Moreover, there is unrebutted evidence that Nabisco, not Tifco, installed the Tifco conveyor at the Nabisco plant. (Hinkle dep., p. 70; Dep. of Vince Berger, p. 9). Finally, there is also evidence which implies that the relationship between the two conveyors was dictated by Nabisco's needs and not by anything having to do with Tifco's conveyor. For example, in discussing a metal plate that had later been added to the upper conveyor as a sort of slide down to the lower conveyor, a Nabisco employee commented that a slide was needed because "you couldn't just drop it on to there" because "the product would break." (Berger dep., p. 15).

Plaintiff has not presented any evidence tending to show that Tifco designed, positioned, or installed the two-conveyor system with the dangerous transfer point. Therefore, it would be unreasonable, as in *Wenrick,* to infer that Tifco created the defective system, and plaintiff cannot defeat Tifco's motion for summary judgment on this ground.

Plaintiff's second argument is that Tifco should have warned about the danger at the transfer point from the unguarded, upper conveyor because jams can occur at transfer points and workers who were stationed there would have to unjam the product and could become caught in the unguarded rollers of the upper conveyor.

Lack of adequate warnings for a product's safe use may be a defective condition. *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 119 (3d Cir.1992). The evidence shows that Tifco did not know that there would be a transfer point between the upper and lower conveyors. (Hinkle dep., p. 37). Plaintiff offers no evidence to refute this. Nonetheless, even if I infer in plaintiff's favor that Tifco knew that there would be a transfer point between the two conveyors, it does not follow that Tifco's conveyor was defective for lacking a warning, since the hazard resulted from Nabisco's incorporation of the Tifco conveyor into the finished two-conveyor system designed and installed by Nabisco.

The Pennsylvania Supreme Court has stated that there are limits on a manufacturer's liability for not warning of a danger where the manufacturer supplies a mere component of a product that is assembled by another party and the dangers are associated with the use of the finished product. *Jacobini v. V. & O. Press Co.,* 527 Pa. 32, 588 A.2d 476, 478 (1991) (citing *Wenrick,* 564 A.2d at 1244). In *Jacobini,* the manufacturer of a die set was held not liable for injuries caused by the expulsion of die materials from a press where the manufacturer had no role in the design or manufacture of the die or press. *Id.* 588 A.2d at 480. The die set itself was safe, and the defendant did not have to warn of dangers associated with the use of a completed product finished by another. *Id.*

Tifco, like the manufacturer in *Jacobini,* designed a component—the lower conveyor—that another party incorporated into a completed product. Nabisco designed the two-conveyor system, installed the Tifco con-

veyor, and thereby created the overall conveyor system. The danger—the transfer point with the unguarded nip point on the upper conveyor—was associated with the use of the entire conveyor system, not with the use of the Tifco conveyor standing alone. Because it was Nabisco that designed and installed the conveyor system, Tifco, like the manufacturer in *Jacobini,* is relieved of a duty to warn of a danger associated with the use of the finished product, the two-conveyor system.

Plaintiff cites *Fleck v. KDI Sylvan Pools, Inc.* in support of her argument that Tifco is liable for not warning of the potential danger from the unguarded rollers at the transfer point. *Fleck* involved a man who became quadriplegic after diving into a pool three and one-half feet deep and breaking his neck. The jury found that the pool liner was defective because it did not have depth markers or "no diving" warnings. 981 F.2d at 119. The manufacturer of the replacement liner argued on appeal that because its product is a component part incorporated into a final product—the pool—it was relieved of its duty to warn about the danger of diving. *Id.* at 117. The Third Circuit held that the manufacturer was not relieved of its duty to warn. *Id.* at 119.

This case is the opposite of *Fleck.* In that case, the defective component, the pool liner, made the system, the pool, unsafe. Here, the component was free of defect and the defect in the finished system was the fault of other persons. Tifco cannot be held liable for a failure to warn about a defect which it did not create and about which it had no knowledge. *See Petrucelli v. Bohringer + Ratzinger,* 1994 WL 81999 at *6, 1994 U.S. Dist. LEXIS 2921 at *20 (E.D.Pa. March 10, 1994).

■ Finally, plaintiff argues that Tifco's conveyor was defective for lacking OSHA-required safety features—a guard for the nip point and an emergency stop button.[5] Tifco presented evidence that its conveyor complied with appropriate OSHA specifications, although it does not specify what those required features are. (Hinkle dep., pp. 36, 75). Mr. Hinkle stated that the Tifco conveyor would not utilize rollers because it was not a belt conveyor. Plaintiff offers no evidence to the contrary, or that the Tifco conveyor should have had a guard, or in and of itself was unreasonably dangerous in any way. Therefore, Tifco cannot be held liable for lacking a non-required guard for a non-existent nip point.

■ There was no evidence about an emergency stop button, but assuming that the Tifco conveyor did not have one, this alleged defect cannot be said to have caused Ms. Willis' injury.[6] There is no evidence that stopping only the Tifco conveyor would have prevented Ms. Willis from being pulled between the rollers of the upper conveyor. What might have been helpful for Ms. Willis would have been an emergency switch to stop the upper conveyor or perhaps both conveyors. The type and placement of such an emergency switch and whether it would stop both conveyors or only one, were not matters within Tifco's control and knowledge. They were entirely dependent upon how the ultimate conveyor system would operate, where personnel would be stationed, and what their various jobs would entail.

It is regrettable that the manufacturer of the upper, belt conveyor is unknown. Ms. Willis' injury occurred when she was pulled into the unguarded rollers of the upper conveyor, for which there was no emergency stop button within her reach. Defendants

5. OSHA [29 CFR] § 1910.212(a) requires that machine guarding shall be provided to protect from the hazards of in-running nip points. Section 1910.263(i)(7), addressing bakery equipment, requires that stop buttons shall be provided on a conveyor where there is a hazard of getting caught.

6. While causation is normally a jury question, where the relevant facts are not disputed and the remoteness of the causal connection between the alleged defect and plaintiff's injury is clear, the

question is one of law. *See Frazier v. Materials Transp. Co.,* 609 F.Supp. 933 (W.D.Pa.1985). There is no dispute about the lack of a kill switch on the upper conveyor. While there is dispute about that same feature on the lower conveyor, even in accepting plaintiff's contention that the Tifco conveyor lacked the feature, the causal connection between a stop button on that conveyor and Ms. Willis' injury from the upper conveyor, is remote.

are not fungible, however, and merely be- cause Tifco is a known manufacturer of a conveyor does not mean that it could be found liable for an accident allegedly caused by the defective product of the unknown conveyor manufacturer.[7] Judgment must be granted in favor of Tifco on plaintiff's strict liability claim.

### B. Negligence

■ In order to succeed in her negligence action against Tifco, plaintiff must show evidence of: (1) a duty under the law requiring Tifco to conform to a certain standard of conduct; (2) failure to conform to the standard; (3) which actually and proximately caused (4) actual damage. *See Griggs v. BIC Corp.*, 981 F.2d 1429, 1434 (3d Cir.1992). It is difficult to tell the precise bases for plaintiff's negligence claim because her response to Tifco's motion intersperses "duty" language (negligence) with "defect" language (strict liability) and, in fact, discusses primarily the latter.[8] Nonetheless, it seems that plaintiff is contending that Tifco is liable because it breached its duty to manufacture the conveyor system in compliance with OSHA standards.

■ As discussed in the strict liability section above, plaintiff argues that Tifco's conveyor did not meet OSHA standards regarding nip point guards and emergency stops. Tifco offers evidence that its product did comply. This disagreement is not a genuine issue of material fact, however, because when the plaintiff talks about a conveyor with a nip point that should be guarded, she is not talking about the Tifco conveyor.

In his earlier report, written before it became clear that Tifco had not manufactured the upper conveyor, plaintiff's expert discussed the OSHA standards for belt conveyors. There is now no dispute that Tifco manufactured only the lower, tabletop con- veyor, which does not utilize rollers and so would not have a nip point. Plaintiff has not presented evidence tending to show that Tifco's conveyor had rollers or an unguarded nip point, or that it did not comply with *applicable* OSHA standards. Moreover, plaintiff has not presented evidence that OSHA regulations imposed upon Tifco any duty to ensure that the pre-existing, upper conveyor, built by an unknown manufacturer, was up to regulatory standards or had safety devices. Therefore, in the absence of some duty imposed by law, regulation, or common sense, Tifco is not liable for the alleged breach of the unknown manufacturer's duty to provide safety features on the belt conveyor.

Plaintiff also argues that Tifco was negligent for not having an emergency stop button on its conveyor. Tifco does not offer specific evidence that its conveyor had emergency kill switches, although it says that its conveyor complied with OSHA regulations. Assuming the inference favorable to the non-moving party, that is, that the lower conveyor lacked an emergency kill switch, Tifco is not liable. There is no evidence that Tifco knew or should have known that there was a nip point on the upper conveyor, and that Tifco's conveyor should therefore have an emergency stop button in close proximity because someone might get injured at the nip point. For example, Mr. Hinkle stated that Tifco had not been provided with photographs of any existing equipment at Nabisco prior to manufacturing its conveyor, and that Tifco had no idea what type of conveyor was the existing conveyor. (Hinkle dep., pp. 52, 69). Moreover, there is evidence, unrefuted by plaintiff, that the drawings which Nabisco gave to Tifco did not indicate where employees would be stationed along the conveyor system. (Hinkle dep., p. 33). Thus, *even if* Tifco had known that the upper conveyor was a belt conveyor with an unguarded nip point,

---

7. I do not presume to be ruling on the liability of the unknown manufacturer, should its identity ever be discovered and plaintiff ever bring action against it. Obviously it is not involved in this case and is not here to defend its product. I am merely noting that plaintiff's theory of the accident and the alleged defect do not implicate Tifco in this matter.

8. For example, paragraph 16 of plaintiff's reply states that Tifco is *strictly liable* to plaintiff because it was *foreseeable* that plaintiff would be stationed at the conveyors' transfer point (emphasis added). As the Pennsylvania Supreme Court has noted, however, "foreseeability is a test of negligence that is irrelevant in the context of strict liability." *Griggs v. BIC Corp.*, 981 F.2d 1429, 1435 (3d Cir.1992) (citations omitted).

plaintiff has not offered any evidence suggesting that Tifco knew an employee would be stationed near the nip point, and that there should therefore be an emergency stop button at that position on Tifco's conveyor. Because there is no evidence that Tifco had knowledge of the unguarded nip point on the upper conveyor or that an employee would be stationed at that point, and because there is no evidence that halting the Tifco conveyor would have prevented Ms. Willis' injuries, Tifco is not liable under a negligence theory for not having an emergency kill switch on its conveyor.

In short, Tifco is not liable in negligence for the alleged lack of safety features on the upper conveyor, or for the lack of an emergency stop button at the transfer point where Ms. Willis was injured. Tifco's motion for summary judgment on plaintiff's negligence claim must therefore be granted.

## III. RELIANCE ELECTRIC, INC.'S MOTION FOR SUMMARY JUDGMENT

Reliance is alleged to have supplied an electric gearmotor, one which has a wide variety of applications, but which in this case powered the conveyor system. Reliance maintains that its motor was purchased out of a Reliance catalog, (Reliance Mot. for Summ.J., ex. D), and would start, run, and stop only at the direction of equipment supplied by others.

### A. Strict Liability

■ Reliance's motion for summary judgment, and plaintiffs' opposition to it, raise many of the same factual and legal issues discussed above. Regrettably, they also pose the same difficulty in ascertaining the nature of the negligence claim as separate from the strict liability claim. Reliance argues that it manufactured a non-dangerous component part installed by someone else, and for that reason there is no liability under Pennsylvania caselaw. Reliance also argues that it is not required to warn of known dangers.

Plaintiff claims that Reliance's motor was defective because it lacked a warning to install the motor in compliance with OSHA standards. Her expert states,

Reliance should have included a permanently affixed, effective instruction/warning label on their product that stated that the product and all devices used to control it must be installed in accordance with OSHA regulations. If such a label ... had been provided on the gearmotor, Tifco and/or Nabisco would have, more likely than not, installed the required shutoff switch.

(Pl.'s Opp. to Mot. for Summ.J., ex. 5 (p. 11 of August report)).

Plaintiff asserts in an affidavit that had there been a posted warning of the need for an emergency kill switch, she would have asked her employer if such a switch were available and if not, why. What neither plaintiff nor her expert offer, however, is any evidence that Reliance knew its motor was being used to power a conveyor, or that Nabisco was unaware of the applicable OSHA regulations. In fact, the evidence shows just the opposite.

While Reliance has stated that powering a conveyor system was one application for its gearmotor, it has also offered evidence showing that its motors are not specified as being for any particular use, and that several factors go into selecting the proper gearmotor. (Reliance Mot. for Summ.J., ex. D). Reliance has also offered evidence that its employees were never at the Nabisco plant in connection with the conveyor system and were only at the plant for other reasons. (Berger dep., p. 36). Plaintiff has offered no evidence tending to show that Reliance knew its gearmotor would be used in this instance to power a conveyor system.

It strains common sense to expect that the manufacturer of an electric motor, capable of many applications, who has neither installed the motor nor been made aware of how it would operate at the plant in question, would be expected to predict that the motor would be used in a bakery to power a conveyor, and therefore, that a warning label referencing OSHA § 1910.263 (concerning emergency stop buttons for bakery conveyors) should be affixed. Moreover, there is unrefuted evidence that Nabisco, which obviously knew it utilized conveyors in its bakery operations, was aware of the relevant OSHA require-

ments. Vince Berger, a Nabisco employee, stated that he was familiar with OSHA regulations regarding conveyor systems and motor shut-offs, and that it was part of Nabisco's corporate culture to be familiar with OSHA regulations. (Berger dep., pp. 36–37). Plaintiff's expert does not claim that Reliance should have installed the emergency switch, only that it should have warned Tifco or Nabisco to do so. Given the unrefuted evidence that Nabisco was already aware of the OSHA requirements, the motor cannot be considered defective for not having a warning about something which the intended recipient already knew.

Plaintiff offers no evidence tending to show that the motor itself was dangerous, only that using it to power a conveyor system where there was a hazard required that the system be equipped with an emergency stop button. Reliance, however, is not required to investigate how its safe motor is used, and whether it is being used in accordance with OSHA regulations. *Petrucelli,* 1994 WL 81999 at *6, 1994 U.S.Dist. LEXIS 2921 at *20. Therefore, the gearmotor cannot be considered unreasonably dangerous for lacking a warning that it should be installed in compliance with federal regulations. Reliance's motion for summary judgment on plaintiff's strict liability claim must be granted.

### B. Negligence

Plaintiff asserts as negligence the failure to warn that the gearmotor should be installed with an emergency kill switch in accordance with OSHA regulations. Her expert maintains that Reliance had a "duty to exercise reasonable care in assuring that the *installation* of their [sic] product ... would be in accordance with federal regulations." (emphasis added). Plaintiff has offered no law to support this proposition, as likely there is none where, as here, there is no evidence that Reliance knew its gearmotor was being incorporated into a conveyor system, no evidence that Reliance had any input into the design or installation of the conveyor system, and no evidence that Reliance had

anything to do with the design or installation of the electrical system which controlled the motor that powered the conveyor system.

Plaintiff has cited no caselaw supporting the proposition that the manufacturer of a generic, non-defective component has a duty to ascertain how its product will be used by the purchaser and to warn that the purchaser should use the product in compliance with the relevant federal regulations. In the absence of such a duty requiring Reliance to warn that its gearmotor should be installed with the safety feature mandated by OSHA § 1910.263, Reliance's motion for summary judgment on plaintiff's negligence claim must be granted.

An appropriate order follows.[9]

### ORDER

AND NOW, this 4th day of November, 1994, it is hereby ordered that:

1. the motion for summary judgment of defendant, Tifco, Inc., is GRANTED, and judgment is entered for defendant and against plaintiff; and

2. the motion for summary judgment of defendant, Reliance Electric, Inc., is GRANTED, and judgment is entered for defendant and against plaintiff.

9. No party has offered any evidence or argument concerning plaintiff's breach of warranty claim. I will assume this cause of action to be abandoned and Count III of the complaint is dismissed without prejudice.