J-A29044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID DOLBY AND SUSAN DOLBY, HIS WIFE, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| ZIEGLER TIRE AND SUPPLY COMPANY d/b/a ZIEGLER TIRE EAST, MICHELIN RETREAD TECHNOLOGIES, INC., | : | |
| KUMHO TIRE USA, INC. | : | No. 694 WDA 2016 |

Appeal from the Order April 14, 2016
in the Court of Common Pleas of Allegheny County,
Civil Division, No(s): GD 11-008401

BEFORE:  DUBOW, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED FEBRUARY 28, 2017**

David Dolby ("David") and Susan Dolby, his wife (collectively "the Dolbys"), appeal from the Order denying their Motion to Remove a Compulsory Nonsuit ("Motion to Remove"),[1] and entering judgment in favor of Ziegler Tire and Supply Company d/b/a Ziegler Tire East ("Ziegler") and Kumho Tire USA, Inc. ("Kumho") (collectively "Defendants").[2]  We affirm.

On May 8, 2009, David, an employee of Samuel D. Brink Trucking, Inc. ("Brink"), was operating a 1995 Ford dump truck on State Route 422 in

---

[1] **_See Rachlin v. Edmison_**, 813 A.2d 862, 868 (Pa. Super. 2002) (explaining that an appeal lies not from the entry of a compulsory nonsuit, but from the trial court's denial of a motion to remove it).

[2] We note that the Dolbys dismissed their claims against Michelin Retread Technologies, Inc. ("Michelin"), prior to trial.  Thus, Michelin is not a party to this appeal.

Indiana County. The left front tire on the truck blew out, causing the truck to drive into the grass median and flip onto its side. David suffered numerous injuries, including, *inter alia*, severe head trauma, eye nerve damage, a punctured right lung, broken ribs, and a fractured leg.

Brink purchased the tire in question, a retreaded tire, from Ziegler. Ziegler manufactured the retreaded tire under a process developed by Michelin. As part of the retreading process, Ziegler strips a worn out, discarded tire, and salvages the casing to use as a component of the retreaded tire. The retreaded tire in this case was originally manufactured by Kumho.

The Dolbys filed a Complaint, raising numerous claims against Alcoa, the manufacturer of the rim on which the retreaded tire was mounted, Ziegler, Michelin, and Kumho. Prior to trial, the Dolbys dismissed their claims against Alcoa and Michelin. The case eventually proceeded to trial solely on the Dolbys' strict liability claim for failure to warn against Defendants.

At trial, the Dolbys presented numerous witnesses, including Robert A. Nocivelli ("Nocivelli"), a heavy truck and forensic mechanics expert. During Nocivelli's testimony, Defendants orally moved for a compulsory nonsuit, arguing that Nocivelli was not qualified to testify about the failure to warn. The trial court denied the oral Motion. Following the Dolbys' case in chief, Defendants filed a Motion for Compulsory Nonsuit, arguing that the Dolbys

failed to present any evidence of a failure to warn. The trial court granted the Motion, finding that Nocivelli conceded that he was not a warnings expert, and that he did not opine that the cause of the accident was the failure to warn. The Dolbys thereafter filed the Motion to Remove. The trial court denied the Motion to Remove. The Dolbys filed a timely Notice of Appeal.

On appeal, the Dolbys raise the following questions for our review:

1. Was the at[-]issue retreaded tire unreasonably dangerous to [David]?

2. Was the lack of warning on the retreaded tire the legal cause of [David's] injuries, based on the heeding presumption doctrine?

3. Have [the Dolbys] proven, under the malfunction theory, through sufficient circumstantial evidence, that placing the retreaded tire on the steering axle was the cause in fact of the coal truck rollover?

4. Did the trial court commit reversible error by not recognizing and following the malfunction theory and the heeding presumption doctrine, necessitating a new trial?

Brief for Appellants at 4.

Our standard of review is well-established:

A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action had been established. Furthermore, all conflicts in the evidence must be resolved in the plaintiff's favor. In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. We will reverse only if the trial court abused its discretion or made an error of law.

- 3 -

***Harvey v. Rouse Chamberlin, LTD.***, 901 A.2d 523, 526 (Pa. Super. 2006) (citations and quotation marks omitted).

We will address the Dolbys' first two claims together. The Dolbys contend that the trial court erroneously granted Defendants' Motion for Compulsory Nonsuit where the Dolbys established a *prima facie* case of strict products liability for a failure to warn on the retreaded tire. Brief for Appellants at 13. The Dolbys argue that the retreaded tire was unreasonably dangerous to David. ***Id***. The Dolbys assert that their expert witness, Nocivelli, testified that placing the retreaded tire on the steering axle was dangerous and unsafe when used in a mixed environment (both line-haul and off-road). ***Id***. at 14-15. The Dolbys point out Nocivelli's testimony that a warning about the use of a retreaded tire in these environments was needed. ***Id***.

The Dolbys also claim that under the heeding presumption doctrine, the lack of warning on the retreaded tire was the cause of David's injuries. ***Id***. at 16. The Dolbys contend that "where no warning or risk has been given, such as this case, Pennsylvania courts have found that a plaintiff must be afforded the presumption that he would have heeded an adequate warning." ***Id***. The Dolbys argue that because they offered evidence that the retreaded tire contained no warning, the trial court should have shifted the burden to Defendants to prove that David would not have heeded the warning, even if it were present. ***Id***. at 16-17, 19. The Dolbys assert that

David did not know of the danger of using the retreaded tires and would have heeded the warning, if it were present. *Id*. at 17-18, 19; *see also id*. at 18 (wherein the Dolbys note that David was not involved in the decision-making as to which type of tire would be placed on the truck).

"Since *Webb v. Zern*, [] 220 A.2d 853 ([Pa.] 1966), the Pennsylvania Supreme Court has recognized a plaintiff's right to pursue an action in strict liability against the manufacturer of a product pursuant to section 402A of the Restatement (Second) of Torts." *Kiak v. Crown Equip. Corp.*, 989 A.2d 385, 389 n.1 (Pa. Super. 2010).[3] "There are three different types of defective conditions that can give rise to a strict liability claim:  design defect, manufacturing defect, and [failure to warn] defect." *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995). "A product is defective due to a [failure to warn] where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Id*. at 1171 (quotation marks and citation omitted).

> [A] plaintiff raising a [failure to warn] claim must establish only two things: that the product was sold in a defective condition "unreasonably dangerous" to the user, and that the defect caused plaintiff's injury. To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product "unreasonably dangerous." For the plaintiff in a [failure to warn] claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller. If the

---

[3] Our Supreme Court declined to adopt the Restatement (Third) of Torts. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 410 (Pa. 2014).

plaintiff fails to establish either of these two elements, the plaintiff is barred from recovery as a matter of law.

*Id*. (citations and footnotes omitted); *see also Jacobini v. V. & O. Press Co.*, 588 A.2d 476, 479 (Pa. 1991) (noting that in a failure to warn case, the plaintiff must demonstrate that the injuries were caused by the failure to warn).

Here, the Dolbys relied upon the testimony of their expert, Nocivelli, to support the failure to warn claim. In establishing his expert qualifications, Nocivelli stated the following, in relevant part:

[Ziegler]: And you are not a human factors or warnings expert, isn't that correct?

[Nocivelli]: I'm not a human factors. I missed the second part.

[Ziegler]: Warnings, warnings.

[Nocivelli]: That's right, no.

[Ziegler]: You don't hold yourself out as a human factors or warnings expert, correct?

[Nocivelli]: That is correct.

[Ziegler]: You would rely upon others for that, correct?

[Nocivelli]: When needed.

N.T., 1/21/16, at 16; *see also id*. at 26 (wherein Nocivelli testified, in response from a question from Kumho's counsel, that he would not offer "any testimony regarding warnings."); *id*. at 43 (wherein Nocivelli stated that "[t]he only warnings or any warnings such as that were in my report, but I don't perceive trying to offer an opinion specifically to that.").

- 6 -

The Dolbys submitted Nocivelli as an expert in heavy trucking and forensic mechanics. *Id*. at 14. Nocivelli stated that he was qualified to testify to the "usage of recapped tires[4] on the steering axle of vehicles." *Id*. at 43 (footnote added). Nocivelli testified that on "numerous occasions[, he] saw the failure of recapped tires on steering axles[,]" and that during tire service calls, he warned companies not to do that. *Id*. at 47, 48. However, Nocivelli further stated that he was not qualified as a tire expert. *Id*. at 20, 49.

During the case-in-chief, Nocivelli testified that he investigated the facts and circumstances of David's accident. *Id*. at 63, 69. Nocivelli additionally testified to the following:

> [The Dolbys]: Do you have an opinion to a reasonable degree of professional certainty in your field of forensic mechanics and heavy truck mechanics as to whether recapped duplex tires should be employed on steering axles in a class A truck such as the one used by David []?
>
> …
>
> [Nocivelli]: It's my opinion, from my knowledge and experience, that wide-based duplex tires, recapped tires[,] should never be put on a steering axle of any vehicle that is going to live in two environments. That's the key. If it lives in one environment, I have no problem with it whatsoever; but[,] whenever you get from one rough environment into something a little bit different, on the highway, it's my opinion that that is not the tire to be used.
>
> There are trucks that, like, refuse trucks, for instance, that use this type of tire[]; but[,] they don't live in that environment like these coal trucks do. Now, line[-]haul companies that run on

---

[4] The term "recapped tires" is used interchangeably with "retreaded tires."

the Turnpike, interstates, all the time use retread tires; but they live in one environment. It's always, always highway, and highway speeds, and smooth roads – much smoother roads than a coal pit.

…

[The Dolbys]: Okay; and in any way – were you able to determine whether there was any evidence whatsoever that [Defendants] ever informed users and consumers not to place recaps on front steering axles such as the truck that [David] was operating?

[Nocivelli]: I've not seen anything like that.

[The Dolbys]: So just to summarize, with respect to the tire, can you tell the jury what exactly you found with this tire?

[Nocivelli]: A ply separation.

[The Dolbys]: Okay; and what's that? …

[Nocivelli]: The various plies that you are seeing there, the plies that go across laterally, across the tire –

[The Dolbys]: Like this? This?

[Nocivelli]: … that's the actual recap body, yes, yes, what you're pointing to; and then what we said before, with regards to the broken segments where the metal goes through the tire.

[The Dolbys]: Did you examine – go ahead. I'm sorry.

[Nocivelli]: And just lack of – lack of adhesion is what I saw.

[The Dolbys]: Can you explain to the jury, what is adhesion?

[Nocivelli]: Adhesion is what is necessary between the top surface where the plies are and the inner part of the actual retread. At some point[,] it should be vulcanized together; and I saw that – it appears to me that it did not get the proper adhesion between the carcass of the tire, the actual carcass of the tire, and the tread, recapped tread as you see it laying there.

[The Dolbys]:  Are you aware of any evidence that the [Kumho] informed users and consumers, including recappers such as Ziegler, not to use this particular size tire, the duplex wide-bodied tire, in the application that [David] was using it in on the day he was injured?

[Nocivelli]:  I've never seen anything like that indicated by either Kumho or Ziegler [].

…

[The Dolbys]:  Do you have an opinion to a reasonable degree of professional certainty in your trade and profession as to whether the use of this particular wide-bodied duplex tire, in the application that [David] was using it in at the time of his injury, was acceptable and safe?

[Nocivelli]:  My opinion is that it is not acceptable and safe.

…

[Ziegler]:   [] Nocivelli, you are completely aware that road hazards exist and can cause puncture leaks on any type of tire, whether it's recapped or new, isn't that correct?

[Nocivelli]:  That is correct. …

[Ziegler]:  And you wrote in your report, you found no causation factors for the blow-out tire in this case, isn't that true?

[Nocivelli]:  Causation factors with regards to a physical piece of physical evidence.

[Ziegler]:  And you wrote it, right?

[Nocivelli]:  That's correct.

…

[Ziegler]: …  [A] specific causation factor for the blow-out was not found, correct?

[Nocivelli]:  That is correct.

…

[Kumho]:  So what you're asking, what you're saying should be done is a warning that's directed to a smaller percentage of use compared to the other types of uses for these tires, true?

[Nocivelli]:  Well, that's true; but when you begin to localize, focus on something like that, it becomes more difficult.

[Kumho]: And as we – I think we may have agreed earlier, a manufacturer or a distributor doesn't know whether it's going to be used in the line[-]haul, or solely off[-]road, or this mixed window, true?

[Nocivelli]:  Well, that's true.  Of course, he wouldn't know.  He couldn't track it.  That's why it needs to be said from the get go.

…

[Ziegler]:  …  You will acknowledge to this jury that it is absolutely, 100 percent legal to have a recapped tire on a steer axle on a truck of this sort?  You write it in your report.  You acknowledge that, correct?

[Nocivelli]:  Correct.

[Ziegler]:  It's not against NHSTA?  It's not against PA law, correct?  It is legal, correct?

[Nocivelli]:  It is, indeed, legal.

[Ziegler]:  And these entities studied the heck out of this kind of stuff, correct?

[Nocivelli]: It's by regulation.

…

[Ziegler]: Once the tire blows, it doesn't matter if it's new or recap, if it's on the steer axle, it's going to cause trouble for the driver, correct?

[Nocivelli]: That is correct.

N.T., 1/21/16, at 81-86, 87-88, 92, 136, 157, 158.

The trial court granted Defendants' Motion for Compulsory Nonsuit, stating the following:

> [T]he jury could give [Nocivelli's testimony] no weight because [he] conceded [that] he was not a warnings expert. …
>
> He offered no opinion concerning the causal relationship between the failure to warn and this accident.
>
> Moreover, he never even opined that the accident would not have occurred if non-retreads would have been used on the steering axle.
>
> In short, [the Dolbys] have not presented a *prima facie* case of either defect or causation.

N.T., 1/26/16, at 25.

Here, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the Dolbys, we conclude that they failed to establish all of the elements of their failure to warn case. Initially, the Dolbys failed to present any evidence supporting their allegation that Defendants' failure to warn David about the dangers of the retreaded tire made the tire unreasonably dangerous. **See Phillips**, 665 A.2d at 1171. Indeed, the Dolbys' expert, Nocivelli, specifically stated that he would not

offer any testimony regarding warnings.[5] Nocivelli also indicated his preference that a retreaded tire not be used on the front steering axle, but did not testify that such a placement was defective. Moreover, the Dolbys did not establish, through any evidence presented at trial, including Nocivelli's testimony, that the lack of a warning caused the accident. In point of fact, Nocivelli could not identify the specific factor that caused the blow-out of the retreaded tire. Finally, the Dolbys' reliance upon the heeding presumption doctrine is misplaced as the doctrine "has been authorized in Pennsylvania only in cases involving workplace exposure to asbestos." ***Viguers v. Philip Morris USA*, *Inc.***, 837 A.2d 534, 537 (Pa. Super. 2003); ***see also Moroney v. Gen. Motors Corp.***, 850 A.2d 629, 634 n.3 (Pa. Super. 2004) (refusing to extend the heeding presumption to a failure to warn defect case). Thus, the Dolbys' first two claims are without merit.

---

[5] We additionally recognize that "limits on a manufacturer's duty to warn are placed at issue where … the manufacturer supplies a mere component of a product that is assembled by another party and dangers are associated with the use of the finished product." ***Jacobini***, 588 A.2d at 478. At trial, Nocivelli testified that the original manufactured tire would complete its entire service life prior to the tire being retreaded. N.T., 1/21/16, at 142-43. Nocivelli stated that during the retreading process, the original tire would be stripped to its casing, and the casing would be a part of the retreaded tire. *Id*. at 143. Nocivelli acknowledged that the original tire manufacturer would have no control over the design of the retreaded tire. *Id*. at 144-45. Here, the Dolbys have not demonstrated that Kumho had control over the assembly of the retreaded tire or had the duty to warn David. ***See Toth v. Econ. Forms Corp.***, 571 A.2d 420, 423 (Pa. Super. 1990) (noting that a company that did not manufacture or supply the product is not liable under a failure to warn claim).

In their third claim, the Dolbys contend that under the malfunction theory,[6] they have proven that the placement of the retreaded tire on the steering axle caused the tire to blow out. Brief for Appellants at 19, 27. The Dolbys argue that the evidence presented at trial ruled out various abnormal uses or reasonable, secondary causes for the tire blowout. *Id*. at 22-27, 29-31. The Dolbys assert that the circumstantial evidence thus demonstrates that the tire was defective under the malfunction theory and was the cause of the tire blowout. *Id*. at 27, 29, 31.

Here, the Dolbys have not cited to any cases extending the malfunction theory to failure to warn cases. *See Dansak v. Cameron Coca-Cola Bottling Co.*, 703 A.2d 489, 495–96 (Pa. Super. 1997) (noting that in cases alleging **manufacturing defects**, the plaintiff may proceed on

---

[6] With regard the malfunction theory, our Supreme Court stated the following:

[T]he malfunction theory requirements correlate with the three elements of a standard 402A claim[, *i.e.,* the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control]. First, the "occurrence of a malfunction" is merely circumstantial evidence that the product had a defect, even though the defect cannot be identified. The second element in the proof of a malfunction theory case, which is evidence eliminating abnormal use or reasonable, secondary causes, also helps to establish the first element of a standard strict liability case, the existence of a defect. By demonstrating the absence of other potential causes for the malfunction, the plaintiff allows the jury to infer the existence of defect from the fact of a malfunction.

*Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa. 2009) (citation omitted).

a malfunction theory). In fact, the Dolbys have not indicated how a warning could malfunction or fail. Because the Dolbys only pursued a strict liablity failure to warn case, the malfunction theory is not applicable to this case.[7]

In their final claim, the Dolbys contend that the trial court erred in failing to apply the heeding presumption doctrine or the malfunction theory prior to granting the Motion for Compulsory Nonsuit. Brief for Appellants at 32.

However, as noted above, the heeding presumption doctrine and the malfunction theory are not applicable to the Dolbys' strict liability failure to warn case. Thus, the Dolbys are not entitled to relief on their final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017

---

[7] Further, as noted above, Nocivelli could not establish the reason for the tire blow-out. Thus, the Dolbys did not eliminate all of the abnormal or secondary causes that could have produced the defect.